UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles William WALBORN, a/k/a Dennis Jackson, Delbert Isoner, Sr., Dennis Isoner, Sr., and Daniel Isnor, Sr., Defendant-Appellant.

No. 83–2412.

United States Court of Appeals,
Fifth Circuit.

April 2, 1984.

Ronald E. Lanier, Beaumont, Tex. (Court-Appointed), for defendant-appellant.

Robert J. Wortham, U.S. Atty., J. Michael Bradford, Asst. U.S. Atty., Beaumont, Tex., for plaintiff-appellee.

Before TATE, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Charles Walborn appeals his conviction on four counts of transporting falsely made securities in interstate commerce in violation of 18 U.S.C. § 2314 (1976). We affirm.

## I.

During 1981, Walborn bilked several banks by executing an old, familiar scheme. Walborn would first open a checking account by depositing a small amount of cash; later, he would deposit a bogus check drawn on a distant bank. After the bogus check was credited to his account and before the check was dishonored and returned from the distant bank, Walborn withdrew funds from the account.

Walborn raises four errors on appeal: (1) the district court improperly admitted illegally seized evidence, (2) defendant was not afforded a speedy trial as required by the Speedy Trial Act, (3) the district court improperly denied defendant's request to appoint a fingerprint expert at government expense, and (4) the district court improperly communicated its opinion of defendant's guilt to the jury.

## II.

### A.

A warrant on charges unrelated to those brought in this indictment was issued in Indiana for Walborn's arrest on July 16, 1981. In December 1981, Walborn was arrested pursuant to this warrant while hiding in a van. During the arrest, agents searched a bag near Walborn on the floor of the van and found checks, deposit slips, and other evidence that were admitted in the trial below.

Walborn's contention that the contents of the bag were illegally seized is without merit. The officers made a lawful arrest and conducted a contemporaneous search of a container in the passenger compartment of the van. The evidence was admissible. See *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

### B.

Walborn maintains that his right to a speedy trial was violated because the government failed to comply with the Speedy Trial Act, 18 U.S.C. § 3161(j) (Supp. VII 1982). The pertinent provisions of the Act provide:

(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial;

or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

When Walborn was indicted for this offense on March 23, 1982, he was incarcerated in an Indiana state penitentiary. Walborn asserts that on March 23, 1982, he received an arrest warrant from Beaumont, Texas, (presumably related to the charges for which defendant was tried below) which erroneously recited that an indictment was attached. While he was still in custody in Indiana, Walborn also admits receiving detainers on these charges on April 2, 1982, and August 13, 1982.

Defendant requested a copy of the indictment from the clerk of the district court on November 4, 1982, but received no response. On January 31, 1983, Walborn again wrote the clerk of court and requested a copy of the indictment. In the same letter he also demanded a speedy trial. Walborn received the indictment on February 23, 1983. On March 1, 1983, the government petitioned for a writ to obtain defendant's presence for arraignment; Walborn was arraigned on May 8, 1983.

Since defendant received a detainer on April 2, 1982, only ten days after the indictment was returned, his complaint is related not to the delay in receiving the detainer but to the failure of his custodian to advise

him of his right to speedy trial. The printed detainer form Walborn received contained a box to be marked, noting the government's request that the defendant be informed of his speedy trial rights. Defendant complains that the appropriate box on the form was not checked and as a consequence he was not advised of his right to speedy trial by his custodian, the warden of the Indiana prison.

The Speedy Trial Act does not require that a prisoner receive a detainer in any particular form. The detainer Walborn admits receiving on April 2, 1982, provided: "The notice requirements of the Speedy Trial Act of 1974 (P.L. 93–619) apply if the Detainer is based on pending Federal criminal charges which have not yet been tried." It is apparent from Walborn's November 4, 1982 and January 31, 1983 letters to the clerk that he knew he had been indicted for "interstate transportation of forged documents." According to Walborn's representations in his January 31, 1983, letter he was aware of his right to a speedy trial when he received the warrant on March 23, 1982.[1] The detainer Walborn received on April 2, 1982, should have filled any gaps in his knowledge in this respect.

We conclude that since the defendant knew of his right to a speedy trial the failure of the government due to clerical error or oversight to request the Indiana prison authorities to specifically advise the defendant of his right does not violate 18 U.S.C. § 3161(j).

## C.

Walborn asserts that it was error for the trial court to deny his request for appointment of a fingerprint expert at government expense. Defendant argues that the expert's "services [were] necessary for an adequate defense" and that he was not financially able to retain an expert. 18 U.S.C. § 3006A(e)(1)(1976).

The government presented an expert who testified that thirteen Walborn prints were found on checks and deposit slips that were admitted into evidence. However, the fingerprints were not the only evidence linking Walborn to the incriminating documents. Walborn admitted that he may have handled some of the documents. R. Vol. 2, pp. 240–41. Most of the documents, including several Tennessee driver's licenses bearing Walborn's picture, were in a bag in Walborn's possession when he was arrested. R. Vol. 2, pp. 243–44, 251–52.

In view of Walborn's admission and the evidence independent of the fingerprints which connected Walborn to the documents, we conclude that a favorable fingerprint expert would not have significantly assisted in the defense and the trial court did not abuse its discretion in declining to appoint a fingerprint expert for defendant.

We have also considered defendant's argument that the trial judge improperly expressed the opinion that defendant was guilty while charging the jury and find it meritless.[2]

AFFIRMED.

---

**1.** Walborn's January 31, 1983, letter states: "The indictment was not furnished me as the original arrest warrant stated, for reasons I do not know. My original thought was to read the indictment to know exactly what the charges are against me and to file for a fast and speedy trial."

**2.** Walborn's argument is based on the following portion of the judge's charge:

But the government does not have to make proof of such identity by direct evidence. They may make it by circumstantial evidence, which they have done in this case which they have offered evidence for that purpose but it is up to you to decide whether or not they have made this identification. So when the court says that they have done so in this case the court means that they have offered circumstantial evidence for the purpose of convincing you that the defendant is the party who committed the offenses.

R. Vol. 2, P. 257.